

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

BRENDA J. ALLEN, et al.,        }
                                    }

     Plaintiffs,           }
                                    }

v.                                 }        **Case No.: 7:11-CV-3532-RDP**
                                    }

FOUNTAINBLEAU  MANAGEMENT  }
SERVICES, LLC, et al.,       }
                                    }

     Defendants.        }

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant Fountainbleau Management Services LLC's Motion for Summary Judgment (Doc. #22). The Motion has been fully briefed. (Docs. #28, 29).

## I.     FACTS[1]

Brenda Allen was employed as a property manager by Defendant Fountainbleau Management Services, LLC ("Fountainbleau") from October 21, 2008, through August 5, 2009, at its Broadmoore Gardens apartment complex in Tuscaloosa, Alabama. (Doc. #1 at 10; Doc. #22-1 at pp. 28, 43; Doc. #22-2).

---

[1] Appendix II to the Court's Initial Order (Doc. #3) sets forth the court's Summary Judgment Requirements. Appendix II specifically notes that "briefs and evidentiary materials that do not conform to the following requirements may be stricken." (Doc. #3 at 13). Appendix II requires that all "All briefs ... begin with a statement of allegedly undisputed relevant material facts set out in separately numbered paragraphs. Counsel must state facts in clear, unambiguous, simple, declarative sentences. *All statements of fact must be supported by specific reference to evidentiary submissions.*" (Doc. #3 at 15) (emphasis added). Appendix II requires that in responsive briefs, "[t]he first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. *Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based.* **All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment**. (Doc. #3 at 16) (italics emphasis added; bold emphasis in original). Plaintiffs' response to Defendant's Motion for Summary Judgment not only fails to dispute Defendant's statement of facts, but also it is almost entirely devoid of record citations. (Doc. #28). Thus, for purposes of summary judgment, Defendant's version of the facts is largely undisputed.

Mrs. Allen's job responsibilities included managing, overseeing, and leasing over four hundred apartments. (Doc. #22-1 at pp. 35-36). Mrs. Allen also engaged in marketing activities directed at leasing vacant apartments (Doc. #22-1 at p. 35), and had general oversight and managerial responsibilities in operating Broadmoore Gardens (Doc. #22-1 at pp. 35-36; Doc. #22-2). Mrs. Allen supervised maintenance staff, her assistant, and contract laborers. (Doc. #22-1 at pp. 35-36, 51-52). Notably, Mrs. Allen regularly supervised two or more employees. (Doc. #22-2 at ¶ 12). Mrs. Allen also performed budgeting and maintained the apartment complex's books, which included preparing end-of-month reports, rental reports, and invoices. (Doc. #22-1 at 37). Mrs. Allen had authority to hire and fire Broadmoore Gardens' employees. (Doc. #22-1 at 53). She fired at least three maintenance employees because they did not meet her standards. (Doc. #22-1 at p. 53). Mrs. Allen also hired her husband as the property's maintenance supervisor. (Doc. #22-3 at p. 10; Doc. #22-1 at p. 53). Mrs. Allen performed employee evaluations, handled their complaints and grievances, and set payroll. (Doc. #22-1 at pp. 47, 55-56).

Mrs. Allen was paid an annual salary of $30,000.00 as the property manager on a bi-weekly rate, the equivalent of $1,153.54 every two weeks, or $576.92 every week. (Doc. #22-2 at ¶ 9; Doc. #22-1 at p. 39; Doc. #22-4). Fountainbleau required Mrs. Allen to maintain timesheets in order to track how many hours per week she worked. (Doc. #22-2 at ¶ 10; Doc. #22-1 at pp. 40-41). Her salary was not subject to reduction because of variations in the quality or quantity of the work performed. (Doc. #22-2 at ¶ 10).

Fountainbleau terminated Mrs. Allen's employment on August 5, 2009, for multiple reasons, including:

    a.     Negligence in filling out and approving timesheets;

b.      Submitting a personal cable bill to the main office for payment, lying about personal payments to the cable company, and submitting altered documents regarding payments made;

c.      Signing an I-9 on employee Ronald Fell on which manager verified [that] the driver's license was seen in person and validated; however, this driver's license had false information pertaining to date of birth;

d.      Submitting false information to the unemployment office regarding the resignation of employee Ronald Allen, her husband.

(Doc. #22-2 at ¶ 4; Doc. #22-2 at p. 8-16).

On July 1, 2009, Mr. Allen resigned his employment with Fountainbleau.  (Doc. #22-1 at p. 13).  In responding to his claim for unemployment benefits, Mrs. Allen submitted false separation information enabling him to be approved for benefits.  (Doc. #22-2 at p. 13).  Thereafter, Fountainbleau appealed, and the State of Alabama Department of Industrial Relations determined that Mrs. Allen had submitted false information and, in fact, Mr. Allen had resigned and was ineligible for unemployment benefits.  (Doc. #22-2 at p. 13).

Fountainbleau reprimanded Plaintiff on July 6, 2009, for submitting incorrect time reports. She was warned the another infraction would result in her termination.  (Doc. #22-2 at p. 10).  On July 16, 2009, a Non-Compliance Form was issued regarding Mrs. Allen's failure to turn in over 13 invoices for payment.  (Doc. #22-2 at p. 12).  On August 4, 2009, another Employee Non-Compliance form was issued related to Plaintiff's submission of another incorrect time sheet.  (Doc. #22-2 at p. 11).  The following day, on August 5, 2009, Mrs. Allen's employment was terminated. (Doc. #22-2 at pp. 8-9).

Following Mrs. Allen's termination, she, too, filed a claim for unemployment benefits.  The claim was denied.  (Doc. #22-2 at p. 15).  In Mrs. Allen's case, after a formal hearing, the State of

3

Alabama Department of Industrial Relations determined that Fountainbleau had discharged Mrs. Allen for actual and deliberate misconduct committed in connection with work after previous warnings.  (Doc. #22-2 at pp. 15-16).

As the property manager, Mrs. Allen and her husband occupied an apartment above the leasing office.  (Doc. #22-1 at p. 79; Doc. #22-2 at ¶ 13).  Theirs was the only apartment above the leasing office, and was accessible by an exterior staircase used only by Mrs. Allen and her husband. (Doc. #22-2 at ¶ 13).  The provision to the Allens of that apartment lease was contingent on Mrs. Allen's employment and she was required to vacate upon her termination on August 5, 2009.  (Doc. #22-2 at ¶¶ 3, 13).

Over two weeks after her termination, on August 23, 2009, Mrs. Allen was in the process of moving out of the apartment.  (Doc. #22 at pp. 77, 79, 83-84, 90).  She was carrying a box down the staircase and she claims the portion of a step that overhangs a riser broke causing her to fall and injure her ankle.  (Doc. #22- at pp. 77, 79, 83-84, 90; Doc. #22-5; Doc. #22-3 at p. 34).  Mr. Allen did not witness Mrs. Allen's fall.  (Doc. #22-3 at p. 36).  Neither of the Allens took any pictures of the broken step or kept the piece of broken wood.  (Doc. #22-3 at p. 35; Doc. #22-1 at p. 78).

In her deposition, Mrs. Allen testified she thought the staircase was unsafe since the day they moved in the apartment:

> Q.    Would you agree with him (Mr. Allen), from day one that you moved in, that you thought the steps were unsafe?
>
> A.    Yes.
>
> Q.    And how would you describe them as being unsafe?
>
> A.    When you would step on them, they would move, they would creak.  When you would step up and step, they would shake.

Q.     Okay.  And you agree with him that you would go up and down these steps multiple times a day.

A.     Yes.

(Doc. #22-1 at pp. 79-80).

Mr. Allen, who was the maintenance supervisor responsible for monitoring the property for needed repairs and executing work orders, also believed the staircase was unsafe since the day they moved in the apartment.  (Doc. #22-3 at pp. 24, 27).  Mr. Allen repeatedly warned his wife about the staircase.  (Doc. #22-3 at pp. 24, 27).  Indeed, in his deposition, he testified as follows:

Q.     During that period of time from March or April 2009 until August 2009, (move-in date) you would have walked up and down those steps several times a day.  Would that be fair to say?

A.     Yes, sir.

Q.     And each time you walked up and down those steps during that period of time you were concerned that the steps were unsafe.

A.     Yes, sir.

Q.     And I think we already established you discussed that fact with your wife?

A.     Yes, sir.

(Doc. #22-3 at pp. 42, 43).

Although Mr. Allen was the maintenance supervisor, he never repaired the staircase.  Doc. #22-3 at pp. 20-22).

Mrs. Allen had complained about the staircase prior to her accident, and Fountainbleau sent someone to repair the staircase and install additional braces.  (Doc. #22-1 at pp. 81-82; Doc. #22-3 at pp. 27, 29-30).  Mr. and Mrs. Allen believed the staircase remained unsafe even after the repairs were made.  (Doc. #22-1 at pp. 81-82; Doc. #22-3 at pp. 27, 29-30).

5

The following two facts are also undisputed.  First, Fountainbleau could have moved Mrs. Allen and her husband to another apartment if they had requested such a move.  (Doc. #22-2 ¶ 14). Second, Fountainbleau was not aware during Mrs. Allen's employment that she believed that it was not paying her proper wages under the FLSA, or that she had made such a complaint.  (Doc. #22-2 at ¶ 6).

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

"To be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 113 (11th Cir. 2010) (citing 10 A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2722, at 382-84 (3d ed.1998)).

Furthermore, the "liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a) ... does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour*, 382 F.3d at 1315 (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).

The claims before the court in this case are those set forth by Plaintiffs in their original Complaint.  (Doc. #1 at pp. 9-15).[2]

## III.    Analysis

---

[2] Plaintiffs filed an Amended Complaint on February 29, 2012. (Doc. #9).  On March 21, 2012, Defendant moved to dismiss Plaintiffs' Amended Complaint.  (Doc. #10).  Plaintiffs failed to respond to the Motion. (Doc. #12).  After a status conference on April 23, 2012, on April 24, 2012, the court ordered Plaintiffs to file an amended complaint on or before June 4, 2012.  Plaintiffs failed to file an amended complaint as ordered. (Doc. #15).  On June 12, 2012, the court conducted a status conference at which, despite failing to file an amended complaint as ordered, Plaintiffs represented to the court that they only planned to pursue the individual claims that were originally filed, *i.e.,* the tort action for premises liability and the wage and hour claim under the FLSA.

A.    **Defendant is Entitled to Summary Judgment on Plaintiffs' Failure to Maintain Premises in a Safe Condition Claim**

It is well-settled that "the duty owed by [a] landowner to a person injured on his premises because of a condition on the land is dependent upon the status of the injured party in relation to the land." *Christian v. Kenneth Chandler Constr. Co.*, 658 So.2d 408, 410 (Ala. 1995). "'The three classifications of persons coming onto the land are trespasser, licensee, and invitee ... . In order to be considered an invitee, the plaintiff must have been on the premises for some purpose that materially or commercially benefitted the owner or occupier of the premises.'" *Ex parte Mountain Top Indoor Flea Market, Inc.*, 699 So.2d 158, 161 (Ala. 1997) (quoting *Sisk v. Heil Co.*, 639 So.2d 1363, 1365 (Ala. 1994)). "One who enters the land of another, with the landowner's consent, to bestow some material or commercial benefit upon the landowner is deemed an invitee of the landowner." *Davidson v. Highlands United Methodist Church*, 673 So.2d 765, 767 (Ala.Civ.App. 1995); *see also* Restatement (Second) of Torts § 332 (1965). "On the other hand, a person who enters the land of another with the landowner's consent or as the landowner's guest, but without a business purpose, holds the legal status of a licensee." *Davidson*, 673 So.2d at 767; *see also* Restatement (Second) of Torts § 330 (1965).

> A landowner owes an invitee a duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn the invitee of defects and dangers that are known to the landowner but are unknown or hidden to the invitee; a landowner owes a licensee a duty to abstain from willfully or wantonly injuring the licensee and to avoid negligently injuring the licensee after the landowner discovers a danger to the licensee.

*Prentiss v. Evergreen Presbyterian Church*, 644 So.2d 475, 477 (Ala. 1994).

Defendant argues that, because her employment had undisputedly already been terminated, Mrs. Allen was a licensee at the time she allegedly fell on the steps. (Doc. #22 at 24). Although the

Allens now argue that she was an invitee (Doc. #28 at p.-10), the Complaint alleges that she was a licensee (Doc. #1 at p. 11). This distinction is of no moment as whether Mrs. Allen was an invitee or a licensee is not controlling. In either event, there was no duty to warn. First, "[o]ne has no duty to warn a licensee of open and obvious defects." *Tuders v. Kell*, 739 So.2d 1069, 1076 (Ala. 1999) (citing *Williams v. Bruno's, Inc.*, 632 So.2d 19 (Ala. 1993)). Second, a premises owner also has no duty to warn an invitee of open and obvious defects in the premises, which the invitee is aware of or should be aware of through the exercise of reasonable care."[3] *Freeman v. Freeman*, 67 So.3d 902, 905 (Ala.Civ.App. 2011).

Mrs. Allen testified that she believed the staircase was unsafe from the day she moved into the apartment. (Doc. #22-1 at pp. 79-80). Mr. Allen, who was the maintenance supervisor responsible for monitoring the property for needed repairs and executing work orders, also believed the staircase was unsafe since the day they moved in the apartment. (Doc. #22-3 at pp. 24, 27). Mr. Allen repeatedly warned his wife about the staircase. (Doc. #22-3 at pp. 24, 27, 42-43). Mr. and Mrs. Allen believed the staircase remained unsafe even after the repairs and bracing. (Doc. #22-1 at pp. 81-82; Doc. #22-3 at pp. 27, 29-30). Thus, it is undisputed that Plaintiffs were, in fact, aware of the alleged dangerous condition of the steps before Mrs. Allen's fall.

"A condition is open and obvious when it is known to the [plaintiff] or should have been observed by the [plaintiff] in the exercise of reasonable care. ...  The entire basis of [a premises owner's] liability rests upon [its] superior knowledge of the danger which causes the [plaintiff's]

---

[3] Moreover, even assuming for the sake of argument that Mrs. Allen was an invitee, "[t]he entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. If that superior knowledge is lacking, the invitor cannot be held liable." *Freeman*, 67 So.3d at 905 (citing *Harding v. Pierce Hardy Real Estate*, 628 So.2d 461 (Ala. 1993)).

injuries.  Therefore, if that superior knowledge is lacking, as when the danger is obvious, the [premises owner] cannot be held liable." *Powell v. Piggly Wiggly Alabama Distributing Co., Inc.*, 60 So.3d 921, 926 (Ala.Civ.App. 2010) (quoting *Horne v. Gregerson's Foods, Inc.*, 849 So.2d 173, 176 (Ala.Civ.App. 2002) (in turn quoting *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1194 (Ala. 2002)) (internal quotation marks and citation omitted).

The Allens have both admitted that they were aware of the danger posed by the staircase at issue.  According to their testimony it was an open and obvious danger that Mrs. Allen should have recognized, and that, by her own admission, she did recognize.  Therefore, Defendant is entitled to summary judgment on Mrs. Allen's failure to maintain premises claim, as well as Mr. Allen's derivative loss of consortium claim.  *See W.G. Yates & Sons, Inc. v. Burkhardt*, 61 So.3d 1095, 1099 (Ala.Civ.App. 2010) (Defendant entitled to judgment as a matter of law on the issue of open and obvious danger where plaintiff admitted awareness of the danger presented.).

**B.**     **Defendant is Entitled to Summary Judgment on Mrs. Allen's FLSA Claims**[4]

**1.**     **Mrs. Allen Has Not Shown She was Entitled to Overtime Compensation**

As a general rule, the FLSA provides that employees are entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty per week. See 29 U.S.C. § 207(a)(1).  The FLSA exempts from its overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity."  *See* 29 U.S.C. § 213(a)(1).  The exemption is an affirmative defense, as to which the employer has the burden of proof.  *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

---

[4] Although Plaintiffs' Brief appears to argue that Mr. Allen also has an FLSA claim (Doc. #28 at pp. 6-7), no such claim is stated in the Complaint.  (Doc. #1 at pp. 13-14).

"The statute of limitations for claims seeking unpaid overtime wages generally is two years, but if the claim is one 'arising out of a willful violation,' another year is added to it." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162 (11th Cir. 2008) (quoting 29 U.S.C. § 255(a)). "To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Id.* at 1162-63 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)).

There is no doubt that Mrs. Allen's FLSA claim is time barred unless she can establish a willful violation. The last day Mrs. Allen worked for Defendant was August 5, 2009. (Doc. #1 at p. 10, ¶ 8). However, her Complaint was not filed until August 22, 2011, over two years later. (Doc. #1 at p. 9). Thus, for her claim to proceed, Mrs. Allen must not only establish an FLSA violation, but also that it was willful.

To establish a prima facie case of liability for unpaid overtime compensation under the FLSA, Plaintiff must demonstrate that: (1) Defendant employed her; (2) Defendant is an enterprise engaged in interstate commerce covered by the FLSA (or Plaintiff is otherwise covered under FLSA); (3) Plaintiff actually worked in excess of a 40-hour workweek; and (4) Defendant did not pay any overtime wages to him/her. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n. 68 (11th Cir. 2008). A Plaintiff must establish 'as a matter of just and reasonable inference' the amount and extent of his work in order to demonstrate that he was inadequately compensated under the FLSA." *Ekokotu v. Federal Express Corp.*, 408 Fed. Appx. 331, 340 (11th Cir. 2011) (quoting *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513 (11th Cir. 1993)).

Mrs. Allen has failed to meet her initial burden of proof in this case that a violation occurred. It is well-established that an employee who brings an action under the FLSA for unpaid overtime compensation has the initial burden of proving that she performed work for which she was improperly compensated. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972). Mrs. Allen has presented absolutely no evidence that she ever worked over forty hours. Plaintiffs' brief asserts that "Plaintiff Brenda Allen often worked more than 40 hours per week." However, this statement is not followed by a citation to the record, nor does any of the evidence submitted in support of Plaintiffs' motion establish this fact. Thus, Mrs. Allen has failed to carry her burden of proof as to the third element of her prima facie case, *i.e.,* that she ever worked over forty hours per week.

### 2.     Mrs. Allen Was an Exempt Employee

Fountainbleau is entitled to summary judgment on Mrs. Allen's wage claim for another (and alternative) reason. Even if Mrs. Allen could establish that she had worked over forty hours in a week, she was an exempt employee. An exemption from the overtime pay requirement exists for employees in a "bona fide executive, administrative, or professional capacity" as defined by FLSA regulations. 29 U.S.C. § 213(a)(1). The Code of Federal Regulations defines executive employees as those (1) who receive compensation "of not less than $455 per week"; (2) whose "primary duty" is management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions

and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

Mrs. Allen managed, oversaw, and leased an apartment building with over four hundred apartments. (Doc. #22-1 at pp. 35-36; Doc. #22-2). She regularly supervised two or more employees, including maintenance staff, her assistant, and contract laborers. (Doc. #22-1 at pp. 35-36, 51-52; Doc. #22-2 at ¶ 12). Mrs. Allen also performed budgeting and maintained the apartment complex's books, which included preparing end-of-month reports, rental reports, and invoices. (Doc. #22-1 at p. 37). She had authority to hire and fire Broadmoore Gardens' employees. (Doc. #22-1 at 53). She fired at least three maintenance employees because they did not meet her standards. (Doc. #22-1 at p. 53). Mrs. Allen also hired her husband to work as the property's maintenance supervisor. (Doc. #22-3 at p. 10; Doc. #22-1 at p. 53). Mrs. Allen performed employee evaluations, handled employee complaints and grievances, and set payroll. (Doc. #22-1 at pp. 47, 55-56).

Mrs. Allen was paid an annual salary of $30,000.00, the equivalent of $1,153.54 every two weeks, or $576.92 every week, an amount more than the $455 per week threshold. (Doc. #22-2 at ¶ 9; Doc. #22-1 at p. 39; Doc. #22-4). Although Fountainbleau required Mrs. Allen to maintain timesheets in order to track how many hours per week she worked, her salary was not subject to reduction because of variations in the quality or quantity of the work performed. (Doc. #22-2 at ¶ 10; Doc. #22-1 at pp. 40-41).

In *Diaz v. Team Oney, Inc.*, 291 Fed. Appx. 947 (11th Cir. 2008), an assistant manager performing manual labor was found to be exempt. In that unpublished opinion, there was evidence that the managerial functions were the most important, and that the plaintiff made recommendations

as to hiring and firing, conducted the first interview of applicants, and was in charge of the store for the majority of his shifts, except when the store manager was present for a few hours. *Id.* at *3.

Here, Mrs. Allen was paid "not less than $455 per week." Her "primary duty" was management of a 400 unit apartment complex. She customarily and regularly directed the work of two or more other employees. Finally, she had the authority to hire and fire other employees (or, at the very least, her suggestions and recommendation as to hiring and firing were given particular weight). The undisputed evidence in the Rule 56 record establishes that Plaintiff was an exempt employee. *See* 29 C.F.R. § 541.100(a). Therefore, Defendant is entitled to summary judgment on Ms. Allen's overtime claim under the FLSA, not only because she has failed to establish a violation, but also because her claims are time barred. If there was no violation, there could not have been a willful violation to extend the statute of limitations.

### 3.     Mrs. Allen Has Failed to Establish an Actionable Retaliation Claim

Plaintiffs' Complaint appears to assert a retaliation claim under the FLSA on behalf of Mrs. Allen. (Doc. #1 at p. 14). Defendant moved for summary judgment on this claim. (Doc. #22 at pp. 20-23). Plaintiffs' opposition to Defendant's Motion fails to address the purported FLSA retaliation claim. Therefore, Plaintiffs have abandoned this claim. *See, e.g., Adkins v. Christie*, 491 Fed.Appx. 996, 998 (11th Cir. 2012) (district court did not err in dismissing plaintiff's claim because he failed to respond to defendant's motion for summary judgment on that issue); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d

14

1301, 1326 (11th Cir. 2000) (stating that the "failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned").

In any event, even if Plaintiffs had not abandoned this claim, Defendant is entitled to summary judgment because Mrs. Allen failed to establish a prima face case. "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'" *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).

First, Mrs. Allen has presented no evidence of protected activity.  Plaintiff's Complaint alleged, generally, that "Brenda J. Allen was discharged from her employment by Defendants for her whistle-blowing activities including challenging of improper payment to employees including herself under the Fair Labor Standards Act."  (Doc. #1 at p. 14).  However, Plaintiffs have pointed to nothing in the Rule 56 record establishes any such "whistle-blowing activities."  Nor has any evidence been submitted that Mrs. Allen ever complained about her pay, or anyone else's pay, under the FLSA.  Therefore, Mrs. Allen has failed to present evidence to support the first element of her prima facie case.

The Rule 56 record contains evidence that Mrs. Allen suffered an adverse employment action, the second element of her prima facie case.  Nevertheless, even if the record contained sufficient evidence to establish the third element, causation, Plaintiffs' brief does not even attempted to show pretext and the record does not support such a finding.  If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext. *Wolf*, 200 F.3d at 1343.  In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken

"but for" the assertion of FLSA rights. *Wolf*, 200 F.3d at 1343; *see also Reich v. Davis*, 50 F.3d 962, 965-66 (11th Cir. 1995).

Defendant articulated multiple reasons for terminating Mrs. Allen's employment, including:

a.   Negligence in filling out and approving timesheets;

b.   Submitting a personal cable bill to the main office for payment, lying about personal payments to the cable company, and submitting altered documents regarding payments made;

c.   Signing an I-9 on employee Ronald Fell on which manager verified the driver's license was seen in person and validated; however, this driver's license had false information pertaining to date of birth;

d.   Submitting false information to the unemployment office regarding the resignation of employee Ronald Allen, her husband.

(Doc. #22-2 at ¶ 4; Doc. #22-2 at p. 8-16).

Plaintiffs have presented no argument related to Mrs. Allen's retaliation claim, and thus have not argued that Defendant's stated reasons for Mrs. Allen's termination were a pretext for FLSA retaliation.   Moreover, following her termination, Mrs. Allen filed a claim for unemployment benefits, which was denied.  (Doc. #22-2 at p. 15)  After a formal hearing regarding her termination, the State of Alabama Department of Industrial Relations determined that Defendant had terminated Mrs. Allen's employment for actual and deliberate misconduct committed in connection with work after previous warnings.  (Doc. #22-2 at pp. 15-16).  Although this finding is not binding on this court, the finding combined with Plaintiffs' utter failure to even attempt to prosecute this claim at the summary judgment stage leads the court to the conclusion that Defendant is entitled to summary judgment on Mrs. Allen's FLSA retaliation claim.

**IV.     Conclusion**

For the foregoing reasons, Defendant Fountainbleau Management Services LLC's Motion for Summary Judgment (Doc. #22) is due to be granted.  The court will issue a separate order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this ___20th_____ day of May, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

17